UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

BETH A. JAEGER-FEATHERS,

                      Plaintiff,

v.

NANCY A. BERRYHILL,
ACTING COMMISSIONER OF THE
SOCIAL SECURITY ADMINISTRATION

                      Defendant.

**DECISION AND ORDER**

1:17-CV-06350(JJM)

---

        This is an action brought pursuant to 42 U.S.C. §405(g) to review the final determination of defendant Nancy A. Berryhill, the Acting Commissioner of Social Security, that plaintiff was not entitled to Disability Insurance Benefits ("DIB"). Before the court are the parties' cross-motions for judgment on the pleadings [15, 18],[1] which the parties have consented to be addressed by me [17]. Having reviewed the parties' submissions [15, 18, 19], plaintiff's motion is granted, and the Acting Commissioner's motion is denied.

### BACKGROUND

        On May 21, 2013 plaintiff, who was 47 years old, filed an application for DIB, alleging a disability onset date of February 26, 2010 (later amended to August 7, 2012), due to fibromyalgia, degenerative joint disease, anxiety, depression, high blood pressure, Post Traumatic Stress Disorder ("PTSD"), back and spine problems, carpal tunnel, and left breast scarring. Administrative record [9], pp. 185, 201, 230.

---

[1]     Bracketed references are to the CM/ECF docket entries. Unless otherwise indicated, page references are to numbers reflected on the documents themselves rather than to the CM/ECF pagination.

After plaintiff's claims were initially denied (id., pp. 112-116), an administrative hearing was held on June 10, 2015 before Administrative Law Judge ("ALJ") Connor O'Brien, at which plaintiff, who was represented by counsel, and a vocational expert testified. Id., pp. 32-97. In her December 4, 2015 decision, ALJ O'Brien determined that plaintiff's severe impairments were "osteoarthritis and degenerative joint disease of the knees, degenerative disc disease, ulnar nerve and carpal tunnel syndrome status post-surgery, peripheral vascular disease, obesity, hypertension, sleep apnea, anxiety and an affective disorder" (id., p. 12), and assessed plaintiff with the residual functional capacity ("RFC") to perform sedentary work with the following additional restrictions: a sit/stand option that permits her to change position every sixty minutes for up to five minutes without leaving the workstation; occasional stooping, crouching, balancing on narrow, slippery or moving surfaces, climbing, kneeling, and crawling; avoiding hazards such as open waters or driving in traffic; no overhead work; occasional pushing and/or pulling at sedentary weights; frequent, but not constant handling and fingering with her right dominant hand; can perform simple routine and repetitive work; can adjust to occasional changes in the work setting; and requires up to three additional unscheduled breaks of less than five minutes each. Id., p. 15.

Based on the RFC and other factors, ALJ O'Brien determined that there were sufficient jobs in the national economy that plaintiff could perform, and therefore was not disabled from August 7, 2012, her amended onset date, through December 31, 2014, the date last insured. Id., pp. 19-20.

In determining plaintiff's RFC, ALJ O'Brien afforded "some weight" to the May 21, 2015 Mental Residual Functional Capacity Questionnaire completed by plaintiff's treating physician, Xingjia Cui, M.D., who began treating plaintiff in June of 2012 on a monthly basis for

PTSD following a dog attack and an earlier motor vehicle accident. Id., pp. 16, 598. Dr. Cui assessed plaintiff as being "seriously limited" or "unable to meet competitive standards" in nearly all of the mental functions necessary to perform unskilled work. Id., p. 600. In terms of plaintiff's capacity to perform the mental functions necessary for semi-skilled and skilled work, Dr. Cui assessed her with "no useful ability" to carry out detailed instructions. Id., p. 601. He further assessed plaintiff as being seriously limited in the ability to interact appropriately with the general public, to maintain socially appropriate behavior and to adhere to basic standards of neatness and cleanliness, and estimated that on average she would miss more than four days per month from work because of her impairments. Id., p. 602.

In affording some weight to that opinion, ALJ O'Brien found that it was "generally not consistent with the overall medical evidence of the record, including Dr. Cui's treatment notes". Id., p. 17. More specifically, she noted that Dr. Cui's most recent treatment records from June 2013 indicted that plaintiff had no "depressed mood, [a] linear thought process, unremarkable thought content and fair insight and judgment". Id., p. 16. ALJ O'Brien also explained that Dr. Cui's assessment of plaintiff having a global assessment of function score of 56 was "reasonably consistent with the more persuasive treatment evidence that establish severe, but not disabling, mental impairment" Id.

ALJ O'Brien similarly afforded "some weight" to the August 27, 2013 assessment of E. Kamin, Ph.D.,[2] a state agency review psychologist, that plaintiff had mild restrictions in the activities of daily living and in maintaining social functioning, and had a moderate limitation in maintaining concentration, persistence, or pace. Id., p. 104.

---

[2] Dr. Kamin's first name is not included in the record.

# ANALYSIS

## A. Standard of Review

"A district court may set aside the Commissioner's determination that a claimant is not disabled only if the factual findings are not supported by 'substantial evidence' or if the decision is based on legal error." Shaw v. Chater, 221 F.3d 126, 131 (2d Cir. 2000) (*quoting* 42 U.S.C. §405(g)). Substantial evidence is that which a "reasonable mind might accept as adequate to support a conclusion". Consolidated Edison Co. of New York. Inc. v. NLRB, 305 U.S. 197, 229 (1938).

It is well settled that an adjudicator determining a claim for Social Security benefits employs a five-step sequential process. Shaw, 221 F.3d at 132; 20 C.F.R. §§404.1520, 416.920. The plaintiff bears the burden with respect to steps one through four, while the Acting Commissioner has the burden at step five. Talavera v. Astrue, 697 F.3d 145, 151 (2d. Cir. 2012).

Plaintiff moves for remand of the action for further administrative proceedings, arguing that ALJ O'Brien erred in assigning "some weight" to the opinions of both Dr. Cui, plaintiff's treating psychiatrist, and Dr. Kamin, a non-examining state agency review psychologist (plaintiff's Memorandum of Law [15-1], pp. 14-18), and by deciding plaintiff's RFC with no opinions as to plaintiff's physical ability to do work. Id., pp. 19-22.

## B. Was there a Gap in the Record?

In connection with plaintiff's argument that ALJ O'Brien did not properly weigh Dr. Cui's opinion, she contends that ALJ O'Brien failed to develop the record, which lacked approximately two years of Dr. Cui's records. Plaintiff's Memorandum of Law [15-1], pp. 18-19. Since "before a district court can evaluate the ALJ's conclusions, the court must ensure that the

claimant received a full and fair hearing", I will initially address this issue. Estrada v. Commissioner of Social Security, 2014 WL 3819080, *3 (S.D.N.Y. 2014).

Toward the beginning of the June 10, 2015 administrative hearing, plaintiff's counsel noted that Dr. Cui's records after April 13, 2013[3] had not been received from him yet, despite two requests to him for the records. [9], p. 37. At the conclusion of the hearing, ALJ O'Brien returned to this issue, asking plaintiff's counsel, "[w]e do want the treatment notes from Dr. [Cui] . . . . Is that right?" (id., p. 94), and "we need this stuff from Dr. Cui . . . right?" Id. p. 95. After plaintiff's counsel responded affirmatively, ALJ O'Brien stated, "Okay . . . . I'll put it over for two weeks". Id. The Acting Commissioner does not dispute plaintiff's allegation that these additional materials did not become part of the record. Plaintiff's Memorandum of Law [15-1], pp. 18-19. Nor is there any evidence in the record that ALJ O'Brien followed up with plaintiff's counsel or attempted to obtain the missing records herself.

The Acting Commissioner argues that "an ALJ properly discharges his duty to develop the record by leafing the record open to allow a plaintiff to submit additional treatment notes". Acting Commissioner's Brief [18-1], p. 18. However, as demonstrated by the differing case law cited by the parties (plaintiff's Memorandum of Law [15-1], p. 18; Acting Commissioner's Brief [18-1], p. 18), "[w]here there is a gap in the record . . . district courts in this circuit have reached conflicting conclusions as to whether the ALJ satisfies that duty by relying on the claimant's counsel to obtain the missing evidence". Sotososa v. Colvin, 2016 WL 6517788, *4 (W.D.N.Y. 2016).

Although neither party cites to any controlling Second Circuit authority specifically addressing this issue, the Second Circuit has broadly held that "[t]he duty of the

---

[3] The record includes records from Dr. Cui through June 22, 2013. [9], p. 378. It is not evident whether those records were produced after the hearing or that counsel misspoke at the hearing.

-5-

ALJ, unlike that of a judge at trial, is to investigate and develop the facts and develop the arguments both for and against the granting of benefits". Vincent v. Commissioner of Social Security, 651 F.3d 299, 305 (2d Cir. 2011). That duty exists, "[e]ven when a claimant is represented by counsel", Moran v. Astrue, 569 F.3d 108, 112 (2d Cir. 2009), and "is enhanced when the disability in question is a psychiatric impairment". Estrada v. Commissioner of Social Security, 2014 WL 3819080, *3 (S.D.N.Y. 2014). However, "where the record evidence is sufficient for the ALJ to make a disability determination, the ALJ is not obligated to seek further medical records". Johnson v. Commissioner of Social Security, 2018 WL 1428251, *5 (W.D.N.Y. 2018).

Even though ALJ O'Brien gave plaintiff's counsel an opportunity submit Dr. Cui's remaining records, the approximately *two years* of missing records, from the period immediately preceding Dr. Cui's May 21, 2015 assessment of plaintiff's limitations, were plainly material to ALJ O'Brien's conclusion that Dr. Cui's assessment was "not consistent with . . . [his] treatment notes". [9], p. 7. Under these circumstances, I cannot conclude that ALJ O'Brien fulfilled her obligation to develop the record. *See* Sotososa, 2016 WL 6517788, *4; Reyes v. Berryhill, 2018 WL 1211506, *2 (W.D. Pa. 2018) ("remand may be warranted for a failure to develop the record, even when the ALJ leaves the record open and a claimant's counsel fails to submit additional materials"). *See also* Cancel v. Colvin, 2015 WL 865479, *5 (S.D.N.Y. 2015) ("[i]t is somewhat troubling that Cancel's counsel . . . failed to bring these deficiencies in the medical record to the ALJ's attention; counsel is thus at least partly responsible for the ALJ's error. Nevertheless, the law is clear that an ALJ's duty to develop the record exists irrespective of whether the claimant is represented"); Harris o/b/o N.L.K. v. Berryhill, 293 F. Supp. 3d 365, 369 (W.D.N.Y. 2018) ("[t]he fact that the essential treatment records were requested, but not

-6-

received, does not obviate the ALJ's independent duty to develop the record, particularly since the ALJ could have exercised his power to subpoena them, but did not").

Since the missing records may bear upon the weight afforded to Dr. Cui's opinion, I have not addressed plaintiff's remaining arguments directed at that issue. However, on remand, the ALJ shall take those arguments into consideration.

### B. Was the RFC the Product of ALJ O'Brien's Impermissible Lay Opinion?

Plaintiff argues that she "had impairments to her knees, back, and right arm, and had received treatment for them throughout the relevant period", but since "[t]he record lacked any medical opinion of how these physical impairments limited [her]", ALJ O'Brien erroneously "decided to determine her RFC on the basis of the bare findings contained in the record". Plaintiff's Memorandum of Law [15-1], p. 19. In response, the Acting Commissioner points to no opinion evidence concerning plaintiff's physical limitations that is supportive of the RFC. Instead, she argues that there is "no categorical rule that an opinion must be received to find the RFC", and that the 398 pages of medical evidence provided "ample evidence" for ALJ O'Brien to make that determination. Acting Commissioner's Brief [18-1], pp. 21-22.

The RFC need "not perfectly correspond with any of the opinions of medical sources cited in his decision". <u>Matta v. Astrue</u>, 508 Fed. App'x 53, 56 (2d Cir. 2013) (Summary Order). An ALJ is "entitled to weigh all of the evidence available to make an RFC finding that was consistent with the record as a whole". <u>Id</u>. However, in the absence of a competent medical opinion, an ALJ is generally "not qualified to assess a claimant's RFC on the basis of bare medical findings . . . . Thus, even though the Commissioner is empowered to make the RFC determination, where the medical findings in the record merely diagnose the claimant's exertional impairments and do not relate those diagnoses to specific residual functional

capabilities, the general rule is that the Commissioner may not make the connection himself." Perkins v. Berryhill, 2018 WL 3372964, *3 (W.D.N.Y. 2018). *See* Goble v. Colvin, 2016 WL 3179901, *6 (W.D.N.Y. 2016) ("the ALJ's RFC determination must be supported by competent medical opinion; the ALJ is not free to form his own medical opinion based on the raw medical evidence"); Wilson v. Colvin, 2015 WL 1003933, *21 (W.D.N.Y. 2015); Guttierez v. Berryhill, 2018 WL 3802015, *3 (W.D.N.Y. 2018). *But see* Dougherty-Noteboom v. Berryhill, 2018 WL 3866671, *10 (W.D.N.Y. 2018) ("the regulations contemplate that the ALJ may form the RFC, at least in part, by making determinations about the 'bare medical findings' independent of an expert medical opinion"). An exception arises "when the medical evidence shows only minor physical impairments". Perkins, 2018 WL 3372694, *3. In those circumstances, "an ALJ permissibly can render a common sense judgment about functional capacity even without a physician's assessment." Id.

Given plaintiff's multiple physical impairments, this is not a case where the medical evidence shows "only minor physical impairments", such that ALJ O'Brien "can render a common sense judgment about functional capacity". Perkins, 2018 WL 3372694. Yet, ALJ O'Brien formulated a RFC with very specific physical restrictions (*e.g.*, "a sit/stand opinion that allows her to change position every sixty minutes for up to five minutes without leaving the workstation" [9], p. 15), without guidance from any medical opinion. Under these circumstances, I conclude that ALJ O'Brien's RFC is not supported by substantial evidence.

## CONCLUSION

For these reasons, plaintiff's motion for judgment on the pleadings [15] is granted to the extent that this case is remanded to the Acting Commissioner for further proceedings consistent with this Decision and Order but is otherwise denied, and the Acting Commissioner's motion [18] is denied.

**SO ORDERED**.

Dated: February 19, 2019

/s/ Jeremiah J. McCarthy
JEREMIAH J. MCCARTHY
United States Magistrate Judge